UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. _____ – Civ

**Denise Guzman,**

Plaintiff,

Vs.

**Carlisle Interconnect Technologies, Inc.**

Defendant.

_____/

## COMPLAINT

Plaintiff, Denise Guzman, ("Plaintiff" or "Guzman") through counsel files suit against Defendant, Carlisle Interconnect Technologies, Inc. ("Defendant" or "CIT") and hereby avers as follows:

### JURISDICTION

1. The jurisdiction of the Court over matters in this Complaint is founded upon 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

2. Guzman is a US Citizen and resides in Broward County, Florida.

3. Carlisle Interconnect Technologies, Inc. is a Delaware Corporation with its principal office located in Scottsdale, Arizona but with offices located in Florida.

4. At all material times, Guzman was authorized by CIT to work in out of her home office in Broward County, Florida.

### VENUE

5. The facts related in this Complaint occurred throughout Florida and while Plaintiff was an employee of Defendant and living within in the Southern District of Florida; therefore, venue is appropriate in this Court.

## ADMINISTRATIVE EXHAUSTION

6. On or about October 24, 2019, Guzman filed a EEOC Charge docketed as 510-2020-00676 alleging discrimination based on her gender (Title VII), Retaliation, Discrimination based upon a Disability, and the Pregnancy Discrimination Act (Title VII) See Exhibit A.

7. Guzman cross-filed that charge with the Florida Commission on Human Relations.

8. On or about September 1, 2020, the EEOC issued a Right to Sue letter. Exhibit B.

## Factual Background

9. Guzman is well educated with a Bachelor of Arts and a Masters in International Business as well as a *Juris Doctorate* degree.

10. Guzman is a woman of Puerto Rican descent.

11. CIT advertises itself as the world's leading designer and manufacturer of high-performance wire and cable, including optical fiber and providing technical assistance to its clients.

12. On October 15, 2018, CIT hired Guzman as its Director of Global Compliance. Her job duties required her to ensure that CIT complied with all US export and import laws and regulations. This required her to develop and plan various processes for the CIT employees to follow to ensure compliance with all laws and regulations.

13. Guzman's direct supervisor was a white male by the name of Tom Alston ("Alston").

14. In or about January 2019, Guzman notified CIT's human resources and Alston that she was pregnant and requested maternity leave.

15. Alston admitted that he had never had an employee request maternity leave before.

16. She was informed there was no specific maternity leave policy. Rather, she was informed that she would have to take a short-term disability.

17. Alston, over the course of the next couple of months, continuously ask Guzman when she was going to be leaving for her maternity leave and how long she was going to be gone for.

18. For obvious reasons, Guzman could not give a definite date and length of time as it all depended on the birth of her child.  At the time, her due date was June 6.

19. While Guzman had anticipated that she would be giving birth in June, her child arrived prematurely on April 29. As such, she left work on April 29 and was immediately placed on short-term disability.

20. Notwithstanding the fact that Guzman was out on disability after having given birth, Alston, as well as other CIT employees, continued to contact her regarding work to be performed for CIT.

21. Guzman was required to prepare emails and update Alston on a risk assessment that she had done as well as complete a presentation for upcoming meeting with the senior leadership that was scheduled for May 15.

22. On May 8, 9,10 and 13, Alston requested that Guzman send him, as well as her temporary replacement, the presentation that was due on May 15.

23. While on leave, Guzman worked on these documents for several days and then sent them to Alston as well as her temporary replacement.

24. Alston became upset with Guzman when he learned that she would not be attending the May 15 risk assessment presentation with senior leadership.  When Guzman told him she would not be there Alston was surprised and became upset and disappointed.

25. On June 5, Human Resources contacted Guzman stating that she had to return to work on June 10. However, she was also informed that she could request additional time off from Alston.

26. Guzman requested to use all of her accrued vacation and sick time which totaled approximately 5 weeks. However, Alston only approved one week of the sick time requiring Guzman's return to work on June 17.

27. When Alston provided her the additional week, he commented that she could enjoy her vacation time and also stated that he was anxious to have Guzman return to work.

28. Alston was oblivious to the fact that Guzman had given birth to a premature a child. Then, on June 7 Guzman learned from human resources that she could use four weeks of vacation time giving her through July 5 before having to return to work.

29. On June 21, Guzman notified Human Resources that her doctor had not cleared her to return to work as she had developed physical complications stemming from childbirth.

30. Guzman submitted the required documents for supplemental disability insurance.

31. Guzman on June 26 provided human resources with a doctor's letter informing them that Guzman would not be cleared to begin working until July 22.

32. Even with this letter, CIT requested the medical documents that Guzman had submitted for the additional disability insurance.

33. CIT terminated Guzman's employment on July 23, 2019.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964
### Pregnancy Discrimination

34. Paragraphs 1-33 are reincorporated as if fully set forth herein.

35. Guzman, at all material times, Guzman was a member of a protected class as a pregnant woman.

36. Defendant was an employer subject to Title VII.

37. Guzman satisfactorily performed the duties required by her position as Director of Global Compliance.

38. Guzman was discharged from her employment and such discharge was causally connected to Guzman's maternity leave.

39. Guzman's discharge occurred under circumstances giving rise to an inference of unlawful discrimination based upon her pregnancy.

Wherefore, Plaintiff respectfully requests that this Honorable Court award all remedies and damages permitted under Title VII including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest and any other relief this Court deems just and proper.

## COUNT II
## American's with Disability Act 42 U.S.C. § 12101

40. Paragraphs 1-33 are reincorporated as if fully set forth herein.

41. At all times material hereto, Guzman had a disability which affected a major life activity.

42. In the alternative, Defendant perceived Guzman as having a disability which affected a major life activity.

43. Guzman was qualified for the job and was able to perform her job duties prior to her disability or perceived disability.

44. Guzman was discharged based upon her disability or her perceived disability.

45. Guzman has suffered damages from the adverse employment decision.

Wherefore, Plaintiff respectfully requests that this Honorable Court award all remedies and damages permitted under the Americans with Disability Act including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest and any other relief this Court deems just and proper.

### COUNT III
### Title VII of the Civil Rights Act of 1964
### Gender Discrimination

46. Paragraphs 1-33 are reincorporated as if fully set forth herein.

47. Guzman is a member of a protected class as a female.

48. Defendant was an employer subject to Title VII.

49. Guzman satisfactorily performed the duties required by her position as Director of Global Compliance.

50. Guzman was treated different in that she was still required to work during short term disability even though male counterparts that went on short term disability were not asked to work during their leave.

51. Guzman was treated as though having a child was a vacation while male counterparts were not deemed to be on vacation when on short term disability leave.

Wherefore, Plaintiff respectfully requests that this Honorable Court award all remedies and damages permitted under Title VII including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest and any other relief this Court deems just and proper.

### COUNT IV
### Violation of Title VII of the Civil Rights Act of 1964
### Retaliation

52. Paragraphs 1-33 are reincorporated as if fully set forth herein.

53. Guzman engaged in protected activity by refusing to attend a conference on May 15, 2019 while on short term disability leave due to the premature birth of her son.

54. Further, Guzman asserted her right to additional disability leave by providing evidence that she had a disability which prevented her from returning to work.

55. Defendant knew or should have known that Guzman was asserting a protected right.

56. As a result of Guzman refusing to attend the May 15 conference and then seeking to take to extend her disability leave, CIT retaliated against her by terminating her employment.

57. Guzman has suffered damages including, but not limited to, the loss of her employment, financial damages, harm to her reputation, and emotional distress.

Wherefore, Plaintiff respectfully requests that this Honorable Court award all remedies and damages permitted under Title VII including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest and any other relief this Court deems just and proper.

**COUNT V**
**Florida Civil Rights Act**
**Retaliation**

58. Paragraphs 1-33 are reincorporated as if fully set forth herein.

59. Guzman engaged in protected activity including but not limited to refusing to work while on short term disability leave and by requesting additional disability leave.

60. Shortly after the protected activity, Guzman suffered materially adverse actions by being terminated.

61. A causal connection exists between the protected activity and the materially adverse actions including, but not limited to, a close temporal proximity and ongoing antagonism against Guzman.

62. There was no justification for these adverse actions and any justification provided was a pretext for retaliation.

63. As a result of Defendants' retaliatory conduct, Guzman has suffered damages including, but not limited to, the loss of her employment, financial damages, harm to her reputation, and emotional distress.

WHEREFORE, Guzman respectfully requests that this Honorable Court enter judgment in her favor and award all remedies and damages permitted under the Florida Civil Rights Act including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

## COUNT VI
## Florida Civil Rights Act
## Discrimination on the Basis of Sex

64. Paragraphs 1-33 are reincorporated as if fully set forth herein.

65. Guzman is a member of the protected class.

66. Defendant is an employer for purposes of the Florida Civil Rights Act.

67. Guzman was qualified for her position a Director of Global Compliance

68. Guzman suffered an adverse employment action in the form of the termination of her employment.

69. These adverse actions occurred under circumstances giving rise to an inference of sex discrimination.

70. There was no justification for these adverse actions and any justification provided wasa pretext for discrimination.

71. As a result of Defendants' discriminatory conduct, Guzman has suffered damages including, but not limited to, the loss of her employment, financial damages, harm to her reputation,and emotional distress.

WHEREFORE, Guzman respectfully requests that this Honorable Court enter judgment in her favor and award all remedies and damages permitted under the Florida Civil Rights Act including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

**COUNT VII**
**Florida Civil Rights Act**
**Discrimination Based Upon Pregnancy**

72. Paragraphs 1-33 are reincorporated as if fully set forth herein.

73. Guzman was a member of a protected class.

74. Defendant was an employer subject to the Florida Civil Rights Act.

75. Guzman was qualified for her position as Division Director of Global Compliance

76. Guzman suffered an adverse employment action in the form of the termination of her employment.

77. Guzman suffered additional adverse employment actions including, but not limited to, being assigned work while on short term disability leave, being constantly questioned about how much time off she would need related to her pregnancy and failure to provide additional time off.

78. These adverse actions occurred under circumstances giving rise to an inference of pregnancy discrimination.

79. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

80. As a result of Defendants' discriminatory conduct, Guzman has suffered damages including, but not limited to, the loss of her employment, financial damages, harm to her reputation, and emotional distress.

WHEREFORE, Guzman respectfully requests that this Honorable Court enter judgment in her favor and award all remedies and damages permitted under the Florida Civil Rights Act including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

### COUNT VIII
### Violation of the Florida Civil Rights Act
### Discrimination based upon a Disability

81. Paragraphs 1-33 are reincorporated as if fully set forth herein.

82. Guzman was a member of a protected class.

83. Defendant was an employer subject to the Florida Civil Rights Act.

84. Guzman was qualified for her position as Division Director of Global Compliance

85. Guzman suffered an adverse employment action in the form of the termination of her employment.

86. Guzman suffered additional adverse employment actions including, but not limited to, being assigned work while on short term disability leave, being constantly questioned about how much time off she would need related to her pregnancy and failure to provide additional time off.

87. These adverse actions occurred under circumstances giving rise to an inference of disability discrimination.

88. There was no justification for these adverse actions and any justification provided was a pretext for discrimination.

89. As a result of Defendants' discriminatory conduct, Guzman has suffered damages including, but not limited to, the loss of her employment, financial damages, harm to her reputation, and emotional distress.

WHEREFORE, Guzman respectfully requests that this Honorable Court enter judgment in her favor and award all remedies and damages permitted under the Florida Civil Rights Act including, but not limited to, backpay, front pay, emotional distress and reputation harm damages, punitive damages, attorney's fees, costs, and interest.

        **Grady Legal, PA**
Attorney for Plaintiff
1645 SE 3rd Ct. #204
Deerfield Beach, FL 33441
754.333.0313
/s/ Jacqueline A. Grady
Jacqueline A. Grady
FBN 635871
jackie@gradylegal.com
service@gradylegal.com